IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JACKIE LEE SANFORD, #801915 | § | |
| VS. | § | CIVIL ACTION NO. 6:05cv257 |
| WARDEN PRATT, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Jackie Lee Sanford, an inmate confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on July 11, 2005. The Plaintiff alleged that his life was in danger. He complained that his requests for a unit transfer and placement in safekeeping had been denied. On November 22, 2005, the Court conducted a preliminary evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The Plaintiff testified as to the factual basis of his claims. Regional Grievance Officer Edith Petty, Assistant Warden Ricky Thompson and Nurse Barbara Hughes were present during the hearing in the event the Court wanted testimony about prison policies or information contained in the Plaintiff's records.

The Plaintiff testified that he needs a transfer to another unit and placement in safekeeping. He testified that he has been threatened by inmates and officers. Inmates have attacked him and slammed his head against the wall. He has filed requests for life endangerment (LID) studies, but he has repeatedly been told there was not enough evidence to substantiate his claims. He testified

that his problems at the Michael Unit began in October, 2004. He received a major case, which led to his placement in administrative segregation. When asked whether administrative segregation was safe, he testified that officers have told him they would roll the doors to his cell and allow other inmates in. Officials have not taken steps to protect him because he has only received verbal threats. The Plaintiff noted, however, that he has been punished when he has made verbal threats. His problems stem from people discovering that he had a sexually related conviction in the 1960s. Officer Boyles asked him if Black inmates had sex with him yet. The Plaintiff filed a grievance. He asked to be placed in safekeeping. Major Cook refused it. The Plaintiff said he would fight back, and then he was punished for threatening an officer. He has filed multiple LID requests, but he has not received any help. The Plaintiff testified that Wardens Pratt, Thompson and Castro have denied his requests to be placed in safekeeping. Chief of Classification Karriker and Classification Officer Fox will not respond to his requests at all.

Warden Thompson testified under oath that he has reviewed the Plaintiff's classification. The Plaintiff has made similar claims at several units. He has asked for safekeeping and transfers. He has been transferred numerous times. He is not eligible for safekeeping because he is confined in administrative segregation. Safekeeping is reserved for weaker and vulnerable general population inmates. The Plaintiff acknowledged that he had been moved seventeen times.

The Plaintiff gave the Court permission to review his classification and grievance records. Certified and authenticated copies of the records were submitted to the Court. The Classification Records include a LID study, which was dated October 13, 2004. The study was begun when the Plaintiff asked for an investigation because his life was in danger since an officer notified inmates about a sex crime the Plaintiff committed 35 years earlier. The Plaintiff specifically mentioned

threats from inmate Chavers. Captain Beard investigated the claim. On September 29, 2004, Major Cook specified that the problem had been resolved by changing the Plaintiff's housing to an area away from inmate Chavers. Another LID investigation was begun on April 25, 2005. The Plaintiff stated that all of the inmates in Eight Building wanted to kill him because of his past conviction. Lt. Odiaka investigated the claim. The Plaintiff was unable to identify any inmates who had threatened him. The Plaintiff asserted that Officers Guinn, Demar and Thomas heard the threats. Statements were obtained from the officers, who specified that they did not hear any threats. The Unit Classification Committee (UCC) reviewed the findings on May 3, 2005. Major Fox, writing for the UCC, found that there was no evidence to support the Plaintiff's allegations. Captain Graham wrote an Inter-Office Communication to Warden Castro on May 15, 2005. He noted that there were two LID investigations. He also noted that Lt. Odiaka talked to the Plaintiff, but the Plaintiff was uncooperative. The Plaintiff simply told him that he would not help him and would send him "back down there to be murdered." Captain Graham noted that there was no evidence that the Plaintiff had been assaulted, and he concluded that the Plaintiff's allegations were frivolous. Another LID study was begun on August 1, 2005. The Plaintiff's claims were investigated by Lt. Ball. He noted that the Plaintiff would not provide specifics regarding who was threatening him. He characterized the Plaintiff as uncooperative and found that nothing new had been added since past LID studies. It is noted that the UCC reviewed the Plaintiff's classification on a weekly basis in August and September, 2005. His classification was kept the same.

   The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that

translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.* at 843 n.8. A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).

In the present case, the Plaintiff wants to be transferred to another unit and placed in safekeeping because he feels that his life is in danger. He is not eligible for placement in safekeeping because he is an administrative segregation inmate, as opposed to a general population inmate. He acknowledged that he has been repeatedly moved. Officials have been receptive to his claims by moving him. They have not ignored him. Moreover, officials have conducted LID studies when the Plaintiff submitted requests alleging that his life was in danger. The Plaintiff's claims that his life was in danger were investigated, but the claims were not confirmed. Once again, officials did not ignore the Plaintiff's claims. The facts as alleged and developed do not support an inference that

anyone has been deliberately indifferent to the Plaintiff's concerns for his safety.  Indeed, he is housed in one of the safest parts of the prison in administrative segregation, where other inmates do not have access to him.  He does not have a basis for a potentially meritorious civil rights lawsuit just because officials could not confirm his vague allegations that his life was in danger and did not make a decision consistent with his wishes.  The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.  The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  It is accordingly

**ORDERED** that the cause of action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  It is further

**ORDERED** that all claims by either party not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **23** day of **November, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE